UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| AMANDA W., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case # 1:20-cv-1647-DB |
| | § | |
| COMMISSIONER OF SOCIAL SECURITY, | § | MEMORANDUM DECISION |
| | § | AND ORDER |
| Defendant. | § | |
| | § | |

## INTRODUCTION

Plaintiff Amanda W. ("Plaintiff") brings this action pursuant to the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner"), that denied her application for Disability Insurance Benefits ("DIB") under Title II of the Act, and her application for supplemental security income ("SSI") under Title XVI of the Act. *See* ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c), and the parties consented to proceed before the undersigned in accordance with a standing order (*see* ECF No. 12).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). *See* ECF Nos. 9, 10. Plaintiff also filed a reply brief. *See* ECF No. 11. For the reasons set forth below, Plaintiff's motion for judgment on the pleadings (ECF No. 9) is **DENIED**, and the Commissioner's motion for judgment on the pleadings (ECF No. 10) is **GRANTED**.

## BACKGROUND

Plaintiff protectively filed applications for DIB and SSI on December 14, 2017, alleging disability beginning February 5, 2014, (the disability onset date), due to herniated discs and other musculoskeletal impairments, trouble sleeping, bipolar, and mood swings. Transcript ("Tr.") 202-08, 222-29, 251. The claims were denied initially on April 17, 2018, after which Plaintiff requested

a hearing. Tr. 12. On December 6, 2019, Administrative Law Judge Ellen Parker Bush (the "ALJ") conducted a video hearing in Lawrence, Massachusetts. Tr. 12. Plaintiff appeared and testified from Buffalo, New York, and was represented by Megan Kale, an attorney. Tr. 12. Vanessa J. Ennis, an impartial vocational expert ("VE"), also appeared and testified telephonically. *Id*.

The ALJ issued an unfavorable decision on February 4, 2020, finding that Plaintiff was not disabled. Tr. 12-24. On September 16, 2020., the Appeals Council denied Plaintiff's request for further review. Tr. 1-6. The ALJ's February 4, 2020 decision thus became the "final decision" of the Commissioner subject to judicial review under 42 U.S.C. § 405(g).

## LEGAL STANDARD

### I.   District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. § 405(g)) (other citation omitted). The Act holds that the Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F. 3d 496, 501 (2d Cir. 1990).

### II.   The Sequential Evaluation Process

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful

work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id*. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments meeting the durational requirements, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id*. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, the claimant is disabled. *Id*. § 404.1509. If not, the ALJ determines the claimant's residual functional capacity, which is the ability to perform physical or mental work activities on a sustained basis notwithstanding limitations for the collective impairments. *See id*. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id*. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id*. § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## ADMINISTRATIVE LAW JUDGE'S FINDINGS

The ALJ analyzed Plaintiff's claim for benefits under the process described above and made the following findings in her February 4, 2020 decision:

1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2016.

2. The claimant has not engaged in substantial gainful activity since February 5, 2014, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: degenerative disc disease of the lumbar spine, history of left knee surgery, depressive disorder and anxiety disorder. (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. The claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b)[1] except standing/walking, each function, six hours total out of an eight-hour workday. Additionally, the claimant is limited to occasional pushing or pulling with the left lower extremity, occasional stooping, kneeling, crouching or crawling and the claimant is limited to occasional climbing of ramps, stairs, ladders, ropes or scaffolds. The claimant must avoid concentrated exposure to extreme heat or cold temperatures and avoid concentrated exposure to respiratory irritants and unprotected heights. Mentally, the claimant can understand and remember simple and some detailed information but can sustain attention and focus well enough to complete only simple tasks and can adapt to simple, routine changes in task.

6. The claimant has no past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on January 25, 1986 and was 28 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

---

[1] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [the claimant] must have the ability to do substantially all of these activities. If someone can do light work, [the SSA] determine[s] that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

4

9.  Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 404.1568 and 416.968).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from February 5, 2014, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

Tr. 12-24.

Accordingly, the ALJ determined that, based on the application for a period of disability and disability insurance benefits protectively filed on December 14, 2017, the claimant is not disabled under sections 216(i) and 223(d) of the Social Security Act. Tr. 24. The ALJ also determined that based on the application for supplemental security benefits protectively filed on December 14, 2017, the claimant is not disabled under section 1614(a)(3)(A) of the Act. *Id*.

## ANALYSIS

Plaintiff asserts a single point of error. Plaintiff argues that the ALJ failed to properly evaluate the opinion of consulting psychiatric examiner Janine Ippolito, Psy.D. ("Dr. Ippolito"). *See* ECF No. 9-1 at 10-14. Specifically, Plaintiff argues that despite finding Dr. Ippolito's opinion partially persuasive, the ALJ failed to reconcile the RFC with the moderate limitations in adaptation provided in the opinion, and therefore, the RFC is not based on substantial evidence.[2] *See id*.

In response, the Commissioner argues that the ALJ properly evaluated Dr. Ippolito's opinion when determining Plaintiff's mental RFC finding, and Plaintiff did not meet her burden

---

[2] The Court notes that Plaintiff does not challenge the ALJ's consideration of her physical impairments. *See generally* ECF No. 9-1. Thus, the Court declines to address the ALJ's physical RFC findings in this opinion. *See Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009) (issues not sufficiently argued in the briefs are considered waived and normally will not be addressed on appeal); *see also Tolbert v. Queens Coll.*, 242 F.3d 58, 75 (2d Cir. 2001) ("It is a settled appellate rule that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.").

of proving that she has mental limitations that exceed the ALJ's RFC finding. *See* ECF No. 10-1 at 9-18.

A Commissioner's determination that a claimant is not disabled will be set aside when the factual findings are not supported by "substantial evidence." 42 U.S.C. § 405(g); *see also Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000). Substantial evidence has been interpreted to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. The Court may also set aside the Commissioner's decision when it is based upon legal error. *Rosa*, 168 F.3d at 77.

Upon review of the record in this case, the Court finds that the ALJ thoroughly considered the evidence of record, and her finding that Plaintiff retained the mental capacity for unskilled work was supported by a variety of evidence, including the clinical findings of record, the opinions of Dr. Ippolito and state agency psychologist T. Bruni, Ph.D. ("Dr. Bruni"), that Plaintiff had no more than mild-to-moderate mental limitations, as well as Plaintiff's wide range of daily activities.

A claimant's RFC is the most she can still do despite her limitations and is assessed based on an evaluation of all relevant evidence in the record. *See* 20 C.F.R. §§ 404.1520(e), 404.945(a)(1), (a)(3); SSR 96-8p, 61 Fed. Reg. 34,474-01 (July 2, 1996). At the hearing level, the ALJ has the responsibility of assessing the claimant's RFC. *See* 20 C.F.R. § 404.1546(c); SSR 96-5p, 61 Fed. Reg. 34,471-01 (July 2, 1996); *see also* 20 C.F.R. § 404.1527(d)(2) (stating the assessment of a claimant's RFC is reserved for the Commissioner). Determining a claimant's RFC is an issue reserved to the Commissioner, not a medical professional. *See* 20 C.F.R. § 416.927(d)(2) (indicating that "the final responsibility for deciding these issues [including RFC] is reserved to the Commissioner"); *Breinin v. Colvin*, No. 5:14-CV-01166(LEK TWD), 2015 WL 7749318, at *3 (N.D.N.Y. Oct. 15, 2015), *report and recommendation adopted*, 2015 WL 7738047

(N.D.N.Y. Dec. 1, 2015) ("It is the ALJ's job to determine a claimant's RFC, and not to simply agree with a physician's opinion.").

Additionally, it is within the ALJ's discretion to resolve genuine conflicts in the evidence. *See Veino v Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002). In so doing, the ALJ may "choose between properly submitted medical opinions." *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998). Moreover, an ALJ is free to reject portions of medical-opinion evidence not supported by objective evidence of record, while accepting those portions supported by the record. *See Veino*, 312 F.3d at 588. Indeed, an ALJ may formulate an RFC absent any medical opinions. "Where, [] the record contains sufficient evidence from which an ALJ can assess the [plaintiff's] residual functional capacity, a medical source statement or formal medical opinion is not necessarily required." *Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 8 (2d Cir. 2017) (internal citations and quotation omitted).

Moreover, the ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in [his] decision," because the ALJ is "entitled to weigh all of the evidence available to make an RFC finding that [i]s consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (citing *Richardson v. Perales*, 402 U.S. 389, 399 (1971) (the RFC need not correspond to any particular medical opinion; rather, the ALJ weighs and synthesizes all evidence available to render an RFC finding consistent with the record as a whole); *Castle v. Colvin*, No. 1:15-CV-00113 (MAT), 2017 WL 3939362, at *3 (W.D.N.Y. Sept. 8, 2017) (The fact that the ALJ's RFC assessment did not perfectly match a medical opinion is not grounds for remand.).

Furthermore, the burden to provide evidence to establish the RFC lies with Plaintiff—not the Commissioner. *See* 20 C.F.R. §§ 404.1512(a), 416.912(a); *see also Talavera v. Astrue*, 697

F.3d 145, 151 (2d Cir. 2012) ("The applicant bears the burden of proof in the first four steps of the sequential inquiry . . . ."); *Mitchell v. Colvin*, No. 14-CV-303S, 2015 WL 3970996, at *4 (W.D.N.Y. June 30, 2015) ("It is, however, Plaintiff's burden to prove his RFC."); *Poupore v. Astrue*, 566 F.3d 303, 305-06 (2d Cir. 2009) (The burden is on Plaintiff to show that she cannot perform the RFC as found by the ALJ.).

Effective for claims filed on or after March 27, 2017, the Social Security Agency comprehensively revised its regulations governing medical opinion evidence creating a new regulatory framework. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017) (technical errors corrected by 82 Fed. Reg. 15, 132-01 (March 27, 2017). Plaintiff filed her applications on December 14, 2017, and therefore, the 2017 regulations are applicable to her claim.

First, the new regulations change how ALJs consider medical opinions and prior administrative findings. The new regulations no longer use the term "treating source" and no longer make medical opinions from treating sources eligible for controlling weight. Rather, the new regulations instruct that, for claims filed on or after March 27, 2017, an ALJ cannot "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical findings(s), including those from [the claimant's own] medical sources." 20 C.F.R. § 416.920c(a) (2017).

Second, instead of assigning weight to medical opinions, as was required under the prior regulations, under the new rubric, the ALJ considers the persuasiveness of a medical opinion (or a prior administrative medical finding). *Id*. The source of the opinion is not the most important factor in evaluating its persuasive value. 20 C.F.R. § 416.920c(b)(2). Rather, the most important factors are supportability and consistency. *Id*.

Third, not only do the new regulations alter the definition of a medical opinion and the way medical opinions are considered, but they also alter the way the ALJ discusses them in the text of the decision. 20 C.F.R. § 416.920c(b)(2). After considering the relevant factors, the ALJ is not required to explain how he or she considered each factor. *Id*. Instead, when articulating his or her finding about whether an opinion is persuasive, the ALJ need only explain how he or she considered the "most important factors" of supportability and consistency. *Id*. Further, where a medical source provides multiple medical opinions, the ALJ need not address every medical opinion from the same source; rather, the ALJ need only provide a "single analysis." *Id*.

Fourth, the regulations governing claims filed on or after March 27, 2017 deem decisions by other governmental agencies and nongovernmental entities, disability examiner findings, and statements on issues reserved to the Commissioner (such as statements that a claimant is or is not disabled) as evidence that "is inherently neither valuable nor persuasive to the issue of whether [a claimant is] disabled." 20 C.F.R. § 416.920b(c)(1)-(3) (2017). The regulations also make clear that, for claims filed on or after March 27, 2017, "we will not provide any analysis about how we considered such evidence in our determination or decision" 20 C.F.R. § 416.920b(c).

Finally, Congress granted the Commissioner exceptionally broad rulemaking authority under the Act to promulgate rules and regulations "necessary or appropriate to carry out" the relevant statutory provisions and "to regulate and provide for the nature and extent of the proofs and evidence" required to establish the right to benefits under the Act. 42 U.S.C. § 405(a); *see also* 42 U.S.C. § 1383(d)(1) (making the provisions of 42 U.S.C. § 405(a) applicable to title XVI); 42 U.S.C. § 902(a)(5) ("The Commissioner may prescribe such rules and regulations as the Commissioner determines necessary or appropriate to carry out the functions of the Administration."); *Barnhart v. Walton*, 535 U.S. 212. 217-25 (2002) (deferring to the

9

Commissioner's "considerable authority" to interpret the Act); *Heckler v. Campbell*, 461 U.S. 458, 466 (1983). Judicial review of regulations promulgated pursuant to 42 U.S.C. § 405(a) is narrow and limited to determining whether they are arbitrary, capricious, or in excess of the Commissioner's authority. *Brown v. Yuckert*, 482 U.S. 137, 145 (1987) (citing *Heckler v. Campbell*, 461 U.S. at 466).

Contrary to Plaintiff's contentions, the ALJ in this case properly analyzed the opinion evidence and the other evidence of record when developing Plaintiff's RFC, and substantial evidence supports the ALJ's RFC finding. Tr. 18.  *See* 20 C.F.R. §§ 404.1527, 416.927.

Plaintiff argues that despite finding Dr. Ippolito's opinion partially persuasive, the ALJ failed to reconcile the RFC with the moderate limitations in adaptation provided in the opinion, and therefore, the RFC is not based on substantial evidence. *See* ECF No. 9-1 at 10-14. Plaintiff is mistaken. Contrary to Plaintiff's contention that the ALJ erred because she did not specifically explain how she considered Dr. Ippolito's finding that Plaintiff had moderate limitations in adaptation, the ALJ was not required to state on the record every reason justifying her decision. *Brault v. Soc. Sec. Admin. Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) ("An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered.") (internal quotation marks and citations omitted); *see also Petrie v. Astrue*, 412 F. App'x 401, 407 (2d Cir. 2011) ("[W]here the evidence of record permits us to glean the rationale of an ALJ's decision, we do not require that [s]he have mentioned every item of testimony presented to [her] or have explained why [s]he considered particular evidence unpersuasive or insufficient to lead [her] to a conclusion of disability."). The fact that the ALJ did not expressly discuss the specific portion of Dr. Ippolito's opinion highlighted by Plaintiff does not negate the substantial evidence that supports the ALJ's RFC finding, as discussed further below.

As noted above, Plaintiff underwent an evaluation with consultative psychologist Dr. Ippolito on March 1, 2018, Tr. 521-26. Plaintiff was cooperative and her manner of relating, social skills, and overall presentation were adequate. Tr. 523. Motor behavior was normal and eye contact was appropriate; speech intelligibility was fluent; and thought processes were coherent and goal directed with no evidence of hallucinations, delusions or paranoia. *Id*. Plaintiff's affect was dysphoric, and she reported feeling "blah" that day. *Id*. Sensorium was clear, and she was fully alert and oriented. *Id*. Her attention and concentration were impaired due to suspected difficulties with two-step math calculations and serial 7s, but she was able to complete serial 3s and do one-step calculations without errors. Tr. 523-24. Memory skills were intact and intellectual functioning was estimated to be below average. Tr. 524. Insight and judgment were fair. *Id*.

Based on Plaintiff's reported history and the mental status evaluation findings, Dr. Ippolito opined that Plaintiff had no limitations in her ability to understand, remember or apply simple directions and instructions; use reason and judgment to make work-related decisions; sustain concentration and perform a task at a consistent pace; sustain an ordinary routine and regular attendance at work; maintain personal hygiene and appropriate attire; demonstrate awareness of normal hazards and take appropriate precautions. Tr. 524. She had a mild limitation in her ability to interact adequately with supervisors, co-workers, and the public. Tr. 524. Plaintiff had a mild-to-moderate limitation in her ability to understand, remember or apply complex directions and instructions and a moderate limitation in her ability to regulate emotions, control behavior and maintain well-being. Tr. 524-25. The ALJ found Dr. Ippolito's opinion partially persuasive reasoning that "[t]he weight of clinical evidence and activities of daily living, including raising four children at home, is consistent with basic cognitive and social function and provides

insufficient evidence for limitations beyond those reflected in the [RFC], including simple and some detailed tasks." Tr. 22.

On March 26, 2018, state agency psychologist Dr. Bruni reviewed the available evidence, including Dr. Ippolito's report, and opined that it was insufficient to evaluate Plaintiff's DIB claim (with a date last insured of June 30, 2016) but found that for purposes of the SSI claim, Plaintiff had severe mental impairments that resulted in a moderate limitation in the ability to understand, remember or carry out detailed instructions. Tr. 22, 72-73, 81-83. Dr. Bruni also found that Plaintiff had only a mild limitation in her ability to adapt or manage oneself, *i.e.*, in her ability to regulate emotions, control behavior and maintain well-being in a work-setting. Tr. 82. *See* 20 C.F.R. Part 404, Subpart P, App. 1, 12.00(E)(4). The ALJ found Dr. Bruni's opinion to be partially persuasive and relied on it, in part, to determine Plaintiff's RFC. Tr. 22.

Contrary to Plaintiff's assertion (*see* ECF No. 9-1 at 10-14), finding an opinion partially persuasive does not mean that the ALJ rejected the opinion, nor does it require the ALJ to adopt the entirety of the opinion. *See Barry v. Colvin*, 606 F. App' x 621, 624 (2d Cir. 2015) (ALJ's RFC finding need not include every limitation assessed by a consultative examiner, and ALJ could, instead, exercise discretion in reviewing the record evidence in its totality). Moreover, an ALJ is permitted to craft an RFC based on medical records and other evidence, without a supportive medical opinion at all. *See, e.g.*, *Corbiere v. Berryhill*, 760 F. App'x 54, 56-57 (2d Cir. 2019) (summary order) (affirming ALJ's physical RFC assessment based on objective medical evidence); *Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 8-9 (2d Cir. 2017) (summary order) (affirming where ALJ rejected sole medical opinion in record speaking to mental functioning); *Johnson v. Colvin*, 669 F. App'x 44, 46-47 (2d Cir. 2016) (summary order) (affirming where ALJ

relied on variety of evidence including claimant's testimony and doctor's letter vaguely asserting severe limitations but noting improvement).

Thus, opinion evidence is only one type of evidence that an ALJ is required to consider. *See* 20 C.F.R. §§ 404.1520(e), 416.920(e) ("we will assess the residual functional capacity based on all the relevant medical and other evidence in your case record"); 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3) (explaining that the adjudicator will assess the RFC based on all the relevant evidence in the case record); 20 C.F.R. §§ 404.1513(a)(1),(4), 416.913(a)(1),(4) (explaining that evidence that can be considered includes objective medical evidence, such as medical signs and laboratory findings; as well as evidence from nonmedical sources, including the claimant, such as from forms contained in the administrative record). *Matta*, 508 F. App'x at 56.

In this case, the ALJ reasonably incorporated the opinions of Dr. Ippolito and Dr. Bruni into the RFC finding by limiting Plaintiff to understanding and remembering simple and some detailed information but sustaining attention and focus well enough to complete only simple tasks, and the ability to adapt to simple, routine changes in task. Tr. 18. *See Mongeur v. Heckler*, 722 F.2d 1033, 1039 (2d Cir. 1983) (medical opinions of consultative examining physicians can constitute substantial evidence); *Petrie v. Astrue*, 412 F. App'x 401, 405 (2d Cir. 2011) (same); *Frye ex rel. A.O. v. Astrue*, 485 F. App'x 484, 487 (2d Cir. 2012) ("The report of a State agency medical consultant constitutes expert opinion evidence which can be given weight if supported by medical evidence in the record.").

In addition, many courts in this Circuit (including this Court) have found mild-to-moderate mental limitations are adequately addressed by RFC limitations similar to those found by the ALJ here and are not disabling. *Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010) ("None of the clinicians who examined [plaintiff] indicated that she had anything more than moderate limitations

in her work-related functioning, and most reported less severe limitations."); *McMillian v. Comm'r of Soc. Sec.*, No. 1:20-CV-7626 (KHP), 2022 WL 457400, at *6 (S.D.N.Y. Feb. 15, 2022) (in finding moderate mental limitations, the ALJ did not err in limiting Plaintiff to simple, routine tasks); *Tara B. v. Comm'r of Soc. Sec.*, No. 1:20-CV-0934 (WBC), 2021 WL 4912585, at *7 (W.D.N.Y. Oct. 21, 2021) (an RFC for simple routine work is not inherently inconsistent with moderate limitations in a plaintiff's mental functioning, particularly where the source who provided such limitations ultimately opined the plaintiff is capable of performing simple, routine, repetitive work); *Gomez v. Comm'r of Soc. Sec.*, 2020 WL 1322565, at *4-5 (W.D.N.Y. Mar. 20, 2020) (residual functional capacity that limits claimant to simple routine tasks accounts for moderate-to-marked limitations); *Cummings v. Comm'r of Soc. Sec.*, 2018 WL 2209204 at *7 n.3 (N.D.N.Y. 2018) (finding that even a marked limitation is not inconsistent with the ability to perform unskilled work); *Wells v. Colvin*, 87 F. Supp. 3d 421, 435–36 (W.D.N.Y. 2015) (finding that moderate limitations, even in the basic mental functions of unskilled work, are not inconsistent with the ability to perform unskilled work).

In addition to the opinion evidence, the ALJ also considered the objective clinical findings of record. Tr. 20. *See* 20 C.F.R. § 404.1529(c)(3) (providing that the SSA "will consider all of the evidence presented, including information about [a claimant's] prior work record, [a claimant's] statements about [her] symptoms, evidence submitted by [her] medical sources, and observations by [the SSA's] employees and other persons").  For example, progress records from Horizon mental health services document intermittent periods of mental health treatment since November 2014 for reported symptoms of anxiety and depression, with more regular attendance since December 2017. Tr. 20, 402-520, 816-24. Prior to that, the record indicates that Plaintiff was

discharged from treatment on at least two occasions for missed appointments and no-shows, and there was a gap in treatment from August 2015 to December 2017. Tr. 20, 402, 417, 429.

Mental status examination on intake in December 2017, revealed an appropriate affect, adequate hygiene and grooming, relaxed posture, no psychomotor agitation, friendly, cooperative and pleasant behavior, appropriate and organized thought content, logical thought process, no abnormal perceptions and intact attention and memory. Tr. 20, 407-08. Insight and judgment were fair. Tr. 408. A mental status examination performed by Horizon nurse practitioner Sharon Yager in February 2018 revealed similar findings. Tr. 20, 714.

The RFC is also supported by the observation of Horizon therapist Matthew Orlando, LCSW, who described Plaintiff as tangential in conversation but comfortable, talkative, sitting with a relaxed posture and readily sharing, even in the context of "overwhelmed" family and health stressors, headaches that could not be treated because of pregnancy, and increased conflict with her significant other. Tr. 21, 818, 822.

While Plaintiff's anxiety-related symptoms fluctuated in May and July 2019, this was in response to family stressors over the prior year. Tr. 700-01, 822-23. However, deficits in mental health brought upon by situational stress are not necessarily disabling. *See Swiantek v. Comm'r of Soc. Sec.*, 588 F. App'x 82, 83-84 (2d Cir. 2015) (finding that behaviors precipitated by situational factors rather than longitudinal manifestations of psychological disorders belied the presence of totally disabling functional limitations); *Denea v. Comm'r of Soc. Sec.*, No. 18-CV-779, 2020 WL 994672, at *6 (W.D.N.Y. Mar. 2, 2020) (Although the record showed that plaintiff handled stress poorly at times, the factors cited by plaintiff that caused him stress were largely episodic and/or situational rather than disabling); *Morgan v. Colvin*, No. 6:14-cv-0549 (LEK), 2016 WL 3527907, at *15 (N.D.N.Y. June 23, 2016) (situational stressors are not a basis for a finding of disability).

In addition to the opinion evidence and objective clinical findings, the ALJ also properly considered Plaintiff's robust activities of daily living. Tr. 21. *See* 20 C.F.R. § 404.1529(c)(3)(i) (An ALJ may consider the nature of a claimant's daily activities in evaluating the consistency of allegations of disability with the record as a whole.); *see also Ewing v. Comm'r of Soc. Sec.*, No. 17-CV-68S, 2018 WL 6060484, at *5 (W.D.N.Y. Nov. 20, 2018) ("Indeed, the Commissioner's regulations expressly identify 'daily activities' as a factor the ALJ should consider in evaluating the intensity and persistence of a claimant's symptoms.") (citing 20 C.F.R. § 416.929(c)(3)(i)); *Poupore v. Astrue*, 566 F.3d 303, 307 (2d Cir. 2009) (claimant's abilities to watch television, read, drive, and do household chores supported ALJ's finding that his testimony was not fully credible).

As the ALJ noted, Plaintiff lived with her husband and children. Tr. 21, 36-37. Plaintiff reported to Dr. Ippolito that she could independently clean, handle personal care, manage her own money, drive, and use public transportation. Tr. 21, 524. Additionally, Plaintiff reported that her hobbies included journaling and painting, and she kept in touch with her mother, brother and mother-in-law. Tr. 21, 524. Plaintiff told Dr. Ippolito that she spent a typical day taking care of her children (two at that time, which increased to three prior to the date of the hearing when Plaintiff was expecting her fourth child). Tr. 21, 36-37, 524. Plaintiff's function report corroborated that she would take care of her children while her husband worked, and that she cleaned and read. Tr. 21, 264-65. She also identified coping skills of walking, music, reading, writing spending time with her son, and talking with supports that included her therapist, three friends, her mom and her brother. Tr. 21, 432. This evidence supports the ALJ's finding that Plaintiff's "activities of daily living weigh in favor of restrictions no greater than the residual functional capacity, especially in the context of the clinical evidence." Tr. 21.

Plaintiff bears the ultimate burden of proving that she was disabled throughout the period for which benefits are sought. 20 C.F.R. §§ 404.1512(a) and 416.912(a); *Schauer v. Schweiker*, 675 F.2d 55, 59 (2d Cir. 1982); *see Dumas v. Schweiker*, 712 F.2d 1545, 1549 (2d Cir. 1983); *Parker v. Harris*, 626 F.2d 225, 231 (2d Cir. 1980); *see also Smith v. Berryhill*, 740 Fed. Appx. 721, 726 (holding that a plaintiff has the duty to prove a more restrictive RFC). Plaintiff here did not meet this burden.

As detailed above, substantial evidence in the record supports the ALJ's decision. Plaintiff's attempts to argue otherwise are meritless. While Plaintiff may disagree with the ALJ's conclusion, Plaintiff's burden was to show that no reasonable mind could have agreed with the ALJ's conclusions, which she has failed to do. The substantial evidence standard is "a very deferential standard of review – even more so than the 'clearly erroneous' standard," and the Commissioner's findings of fact must be upheld unless "a reasonable factfinder would *have to conclude* otherwise." *Brault*, 683 F.3d at 448 (emphasis in the original). As the Supreme Court explained in *Biestek v. Berryhill*, "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high" and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

For all the reasons discussed above, the Court finds that the ALJ properly considered the evidence of record, including the medical opinion evidence, the treatment notes, and Plaintiff's daily activities, and the ALJ's findings are supported by substantial evidence. Accordingly, the Court finds no error.

## CONCLUSION

Plaintiff's Motion for Judgment on the Pleadings (ECF No. 9) is **DENIED**, and the Commissioner's Motion for Judgment on the Pleadings (ECF No. 10) is **GRANTED**. Plaintiff's Complaint (ECF No. 1) is **DISMISSED WITH PREJUDICE**. The Clerk of Court will enter judgment and close this case.

**IT IS SO ORDERED**.

DON D. BUSH
UNITED STATES MAGISTRATE JUDGE